UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAWN PHILLIPS,

        Plaintiff,

vs.

                               Case No.  3:12-cv-661-J-34MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Supplemental Security Income.  The Court has reviewed the

record, the briefs, and the applicable law.  For the reasons set forth below, the undersigned

**RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI")

benefits on May 21, 2009, alleging disability beginning January 1, 2004.[2]  (Tr. 168).  The

Social Security Administration denied Plaintiff's application initially on February 3, 2010 (Tr.

87) and again upon review on June 7, 2010.  (Tr. 97).  Plaintiff timely filed a request for a

hearing before an administrative law judge ("ALJ") and his case was heard on May 24,

_____

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2] Plaintiff's alleged onset date was later amended to January 9, 2009.  (Tr. 31).

2011. (Tr. 27-72, 100). The ALJ issued a decision finding Plaintiff not disabled on August

25, 2011. (Tr. 12-21). Plaintiff submitted a Request for Review by the Appeals Council,

which was denied on March 27, 2012. (Tr. 2-4, 92-93). Accordingly, the ALJ's decision is

the final decision of the Commissioner. After being granted an extension by the Social

Security Administration, Plaintiff filed his complaint with the United States District Court on

June 11, 2012. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Through his amended application for SSI benefits, Plaintiff claims to have been

disabled since January 9, 2009 due to bipolar disorder, schizophrenia, and attention deficit

hyperactivity disorder ("ADHD"). (Tr. 31, 172). Additionally, Plaintiff claims to be disabled

due to a learning disorder not otherwise specified. (Doc. 16, pp. 10-12).

### B.    Summary of Applicable Evidence

Plaintiff was born on March 22, 1979, and was thirty-two years of age on the date of

his hearing before the ALJ. (Tr. 11). He attended special education classes through the

seventh grade. Id. The following provides a brief summary of Plaintiff's medical history.

On August 4, 2006, Plaintiff was interviewed by a court resource coordinator from

MHMRA New Start Forensic Services in Houston Texas. (Tr. 381-83). Plaintiff reported he

suffered from bipolar disorder, experienced difficulty with concentration, felt stressed,

experienced blackouts, felt depressed, had difficulty recalling information, and heard voices

others did not hear. Id. Plaintiff also reported a history of bipolar disorder, ADHD, manic

depression, and two suicide attempts. Id. The interviewer described Plaintiff as well

groomed, pleasant, cooperative, shaky, nervous, and speaking with a slur. Id. Plaintiff was

admitted to the New Start program to attend therapy on August 18, 2006. (Tr. 379)

Plaintiff attended single and group therapy at New Start through January 10, 2007. (Tr. 345-80). During this time, Plaintiff was evaluated by Dr. Shaista Chunawala. Plaintiff reported many difficulties to Dr. Chunawala, including depression, trouble sleeping, agitation, anger, difficulty concentrating, irritable moods, hearing voices, and a tendency to withdraw. (Tr. 362, 375). Over the course of treatment, Dr. Chunawala diagnosed Plaintiff with bipolar disorder, ADHD, polysubstance dependence, and borderline intellectual functioning. (Tr. 346, 371, 373). Dr. Chunawala prescribed Zoloft, Trazodone, and Respirodone to manage Plaintiff's symptoms. (Tr. 361, 379).

Between February and August of 2008, Plaintiff underwent psychiatric evaluations by the Florida Department of Corrections while incarcerated at Appalachee Correctional Institute. (Tr. 255-92). An initial psychological screening conducted February 6, 2008 reported Plaintiff's mental status was within normal limits with the exception of a depressed appearance. (Tr. 288). During the screening, Plaintiff reported difficulty sleeping, low energy, diminished appetite, and difficulty concentrating. Id. Plaintiff denied psychomotor problems, exhibited adequate judgment and insight, and demonstrated normal immediate memory and remote memory. (Tr. 289). An evaluation conducted February 7, 2008 reported Plaintiff demonstrated alert consciousness, appropriate behavior, and cooperative attitude. (Tr. 284). Plaintiff's immediate, recent, and remote memory were all described as good. Id. Plaintiff's concentration and ability to think abstractly were also described as good. Id. On May 22, 2008, Plaintiff was evaluated by Medical Psychological Specialist, Elliot Brown, and Senior Psychologist, Dr. Gibson, of the Florida Department of Corrections. (Tr. 279-82). The evaluation noted Plaintiff achieved a score of 103 on a recently

administered IQ test. (Tr. 281). Plaintiff was described as properly groomed and dressed, alert, and oriented. Id. Plaintiff's recent and remote memory were intact, his thinking was logical and goal directed, and his insight and judgment were good. Id. Plaintiff was diagnosed with an adjustment disorder with mixed anxiety and depressed mood. Id. Plaintiff attended counseling to control his mood and feelings of anxiety through June 20, 2008. (Tr. 268-74). Reviews conducted June 20, 2008 indicated Plaintiff was observed without medications for relapse, but Plaintiff did not show any signs of symptoms. (Tr. 277). Plaintiff was not participating in any ongoing counseling at that time and did not desire further treatment. (Tr. 275). A final note dated August 8, 2008 again stated no further treatment needs were expressed or indicated. (Tr. 276).

On December 21, 2009, Plaintiff met with consultative examiner, Dr. Lynn Helder, Ph.D., P.A., for evaluation. (Tr. 296-301). Plaintiff reported he was not on medications at that time and denied any illegal drug use. (Tr. 297). Dr. Helder stated Plaintiff was pleasant and polite, showed good hygiene and grooming, showed good eye-contact, and was cooperative in the evaluation. (Tr. 298). Plaintiff's mood was described as dysthymic and anxious with a restricted affect. Id. Plaintiff showed mild word finding problems, but was oriented and his thoughts were logical and rational. Id. Plaintiff showed marked impairment in concentration skills, working memory, and mental control on the Digit Span Sub-Test, but scored a twenty-eight out of thirty on the Folstein Mini-Mental State Exam (within normal limits). Id. Plaintiff was diagnosed with bipolar disorder, generalized anxiety disorder, ADHD, and a learning disorder not otherwise specified. (Tr. 299). Dr. Helder ruled out the possibility of borderline intellectual functioning. Id. Overall, Dr. Helder concluded Plaintiff demonstrated moderate impairment with concentration skills, mental control, and working

memory with a marked impairment in short-term memory. (Tr. 300). Dr Helder opined

Plaintiff was not able to work at that time due to a mood disorder and cognitive difficulties.

Id. Dr. Helder further opined that Plaintiff be seen for psychiatric medication evaluation as

soon as possible to avoid potential future suicide attempts. Id.

On February 2, 2010, Psychological Consultant, Val Bee, Psy.D., prepared a

Psychiatric Review Technique Form ("PRTF") assessing the severity of Plaintiff's mental

impairments. (Tr. 301-14). The PRTF noted Plaintiff's record indicated he suffered from

bipolar disorder, ADHD, generalized anxiety disorder, and a history of antisocial features.

(Tr. 301-10). However, Dr. Bee opined Plaintiff's impairments were not severe. (Tr. 301).

Dr. Bee found Plaintiff's mental impairments caused mild restrictions in activities of daily

living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining

concentration, persistence, and pace. (Tr. 311). Dr. Bee also found Plaintiff experienced no

episodes of decompensation that lasted for an extended duration. Id. The PRTF referred to

the examination conducted by Dr. Helder, but stated those findings were poorly supported

by Plaintiff's prison records, objective mental status findings, IQ, and activities of daily living.

(Tr. 313). Dr. Bee concluded there was no compelling evidence that Plaintiff suffered from a

severe mental impairment at that time. Id.

On June 7, 2010, Medical Consultant, Dr. Martha Putney, Ph.D., prepared a second

PRTF assessing the severity of Plaintiff's impairments. (Tr. 315-27). Dr. Putney found

Plaintiff's impairments caused no restrictions in activities of daily living; mild difficulties in

maintaining social functioning; and mild difficulties in maintaining concentration, persistence,

and pace. (Tr. 325). Dr. Putney also found Plaintiff had not suffered from any episodes of

decompensation which lasted for an extended period of time. Consequently, Dr. Putney

opined Plaintiff's mental impairments were not severe. (Tr. 315). This PRTF also referred to Dr. Helder's examination, but indicated Plaintiff's average IQ was adequate to perform moderately complex to complex tasks in the workplace. (Tr. 327). Dr. Putney concluded Plaintiff was able to work when clean, sober, and motivated to do so. Id.

On June 9, 2010, Plaintiff met with Advanced Registered Nurse Practitioner ("ARNP"), Paula Stowell, of the St. John's County Mental Health Department for a mental status exam. (Tr. 341-45). ARNP Stowell noted Plaintiff was well dressed and showed good hygiene, but exhibited poor eye-contact and poor self-esteem. (Tr. 341). Plaintiff's mood was described as up and down, dysphoric, dysthymic, anxious, and angry. Id. His thought process was logical and relevant, but he showed signs of psychomotor agitation and racing thoughts. Id. ARNP Stowell stated Plaintiff exhibited low intellectual functioning and possible mild mental retardation, but was alert and oriented. (Tr. 342). Plaintiff demonstrated impaired memory for immediate, recent, and remote events. Id. ARNP Stowell opined Plaintiff was not able to work on a full-time basis due to an inability to follow directions or perform tasks, but stated he could work part-time in jobs that required very little mental tasks. Id. Plaintiff was diagnosed with bipolar disorder, ADHD, a panic disorder with agoraphobia, PTSD, mild mental retardation, and low intellectual functioning. Id.

On April 4, 2011, Plaintiff met again with ARNP Stowell to complete a Mental Health Assessment. (Tr. 330-33). The assessment addressed Plaintiff's ability to perform work-related activities on a day to day basis. It posed a total of twenty-three questions spanning five categories of work related skills. ARNP Stowell indicated Plaintiff would experience extreme limitations in fourteen areas, marked limitations in seven areas, slight limitations in one area, and would require at least four absences from work per month. Id. ARNP Stowell

further opined Plaintiff exhibited poor attention, which rendered him unable to function in social settings.  (Tr. 332).

C.    <u>Summary of the ALJ's Decision</u>

A claimant is entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last continuously for a period of at least twelve months. 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 20 C.F.R. § 416.905.  The ALJ must follow a five step sequential process in evaluating a claim of disability.  20 C.F.R. § 416.920.  First, if a claimant is performing substantial gainful activity, he is not disabled.  <u>Id.</u>  Second, if a claimant does not have any impairment or combination of impairments which significantly limits his ability to do basic work activities, he is not disabled.  <u>Id.</u>  Third, if the claimant's impairments meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart  P, Appendix 1, the claimant is considered disabled without regard to his age, education, or work experience.  <u>Id.</u>  Fourth, if the claimant's impairments do not meet or equal any of the listed impairments, they must prevent him from performing any past relevant work.  <u>Id.</u>  Fifth, if the claimant's impairments (considering his age, education, work experience, and RFC) prevent him from doing other work that exists in the national economy, he is disabled.  <u>Id.</u> Claimants bear the burden of persuasion through the fourth step, but the burden shifts to the Commissioner at the fifth step.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, at the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application for disability benefits.  (Tr. 14).  At the second step, the ALJ found Plaintiff suffered from the following severe impairments: bi-polar

disorder, generalized anxiety disorder, and ADHD.  Id.  At the third step, the ALJ found

Plaintiff did not have an impairment or combination of impairments which met or equaled

any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16).

The ALJ assessed Plaintiff's RFC as sufficient to allow him to perform a full range of

work at all exertional levels with four nonexertional limitations.  (Tr. 17).  First, Plaintiff was

limited to work that involved only simple, routine, repetitive tasks.  Id.  Second, Plaintiff was

limited to work that required only occasional changes in the work setting.  Id.  Third, Plaintiff

was limited to work that required no more than frequent interaction with crowds, the public,

and co-workers.  Id.  Fourth, Plaintiff was limited to work that did not involve fast paced, high

production demands.  Id.

At the fourth step, the ALJ found Plaintiff did not have any past relevant work.  (Tr.

20).  At the fifth step, the ALJ posed a hypothetical question to a vocational expert ("VE") to

determine the extent to which Plaintiff's nonexertional limitations eroded his occupational

base.  Id.  The VE testified that a person with the same age, education, work experience,

and RFC as Plaintiff would be able to perform the duties of a ticket taker, kitchen helper, and

cleaner.  (Tr. 69-70).  Accordingly, the ALJ found Plaintiff was not disabled as defined in the

Social Security Act.  (Tr. 21).

III.    ANALYSIS

A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence.  Richardson v. Perales, 402

U.S. 389, 390, 91 S. Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if

supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence must do more than create a mere suspicion of the existence of a fact, and must include relevant evidence which a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560.

B.    **Issues on Appeal**

Plaintiff raises four issues on appeal. First, Plaintiff argues the ALJ committed error by failing to include a learning disorder among Plaintiff's severe impairments at step two of his analysis. (Doc. 16, pp. 10-12). Second, Plaintiff claims the ALJ erred in his consideration of the opinions of two medical sources in determining Plaintiff's RFC. (Doc. 16, pp. 12-19). Third, Plaintiff argues the ALJ erred by failing to make a proper credibility finding regarding Plaintiff's testimony at the administrative hearing. (Doc. 16, pp. 19-21). Fourth, Plaintiff asserts the ALJ erred by posing an incomplete hypothetical question to the VE at the administrative hearing. (Doc. 16, pp. 21-22). Plaintiff's second and third issues are further divided into more specific claims of error. The Court will examine each of Plaintiff's contentions. Because the second issue requires the lengthiest discussion and is

dispositive of the first and fourth issues, the Court will begin its analysis with this issue, followed by the first, and then the fourth. Because the Court does not find merit in Plaintiff's third alleged error, it will discuss this issue last.

### 1. Whether the ALJ erred in his treatment of the opinions of consultative examiner Dr. Helder and ARNP Stowell

Plaintiff argues the ALJ erred in his consideration of the opinions of consultative examiner Dr. Helder and ARNP Stowell. (Doc. 16, pp. 12-19). With respect to the evidence obtained from Dr. Helder, Plaintiff asserts the ALJ committed three errors. First, Plaintiff contends the ALJ improperly characterized Dr. Helder's opinions as inconsistent with the medical evidence or record and failed to cite any contrary medical evidence. (Doc. 16, p. 15). Second, Plaintiff claims the ALJ improperly characterized Dr. Helder's opinions as being inconsistent with Plaintiff's testimony at the administrative hearing. Id. Third, Plaintiff claims the ALJ improperly relied on the proposition that the final question of disability is a finding of fact reserved for the Commissioner and failed to consider the entirety of Dr. Helder's evaluation. (Doc. 16, p. 15-16). The Court disagrees with the first two alleged errors but finds merit in Plaintiff's discussion of the third alleged error.

Plaintiff first contends the ALJ improperly discounted Dr. Helder's opinions as being inconsistent with the medical evidence of record, but failed to provide any specific contrary medical evidence. (Doc. 16, pp. 15-16). In the discussion of his RFC findings, the ALJ stated:

> Dr. Helder opined that the claimant was not capable of gainful employment at this time due to his mood disorder and concomitant cognitive impairments. The undersigned has considered the consultative examiner's opinion regarding the claimant's ability to work. The consultative examiner noted that the claimant was not employable 'at this time,' which does not

eliminate work completely and is not consistent with all other medical evidence of record and testimony showing that the claimant is functioning well; therefore, the undersigned gives this opinion little weight.

(Tr. 19). The basis of Plaintiff's objection appears to be the ALJ's statement that Dr. Helder's opinion regarding Plaintiff's ability to work was not consistent with other medical evidence and testimony at the administrative hearing. (Doc. 16, pp. 14-15).

In weighing the medical opinions of acceptable medical sources, the ALJ must give appropriate weight based on the length and frequency of treatment, the nature and extent of treatment, the medical evidence supporting the opinion, the opinion's consistency with the record as a whole, the source's specialization in relevant medical issues, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c). However, the opinions of medical sources on certain issues, such as a claimant's ability to work, are not medical opinions and the ALJ need not apply the factors provided in 20 C.F.R. § 416.927(c) in considering them. 20 C.F.R. § 416.927(d).

Plaintiff asserts the ALJ failed to provide medical evidence in support of his decision to discount Dr. Helder's opinion regarding Plaintiff's ability to work. However, the Court notes that the ALJ also referred to Dr. Helder's examination three paragraphs prior to the statement to which Plaintiff objects. (Tr. 18). In that section, the ALJ concluded that allegations of Plaintiff's inability to work were poorly supported by objective medical findings, prison records, and Plaintiff's current daily functioning. (Tr. 18). The ALJ's allusion to objective medical findings and prison records refers to Plaintiff's score of 103 on the Beta-III intellectual functioning test and Plaintiff's score of 28 out of 30 on the Folstein Mini-Mental Status Examination administered by Dr. Helder. The ALJ's allusion to prison records

appears to refer to the examination notes discussed earlier in the ALJ's assessment of Plaintiff's RFC. These notes do appear to provide findings contrary to the ones upon which Dr. Helder based his opinion regarding Plaintiff's ability to work. To name a few, a note dated June 20, 2008 stated Plaintiff was observed without medication for signs of relapse but showed no signs of symptoms and no indication of mental health needs. (Tr. 277). Additionally, the notes indicated Plaintiff's recent memory and remote memory were described as "good" on several occasions. (Tr. 281, 284, 289). Although the ALJ did not give weight to the two PRTF's authored by State Agency medical consultants, the consultants shared the ALJ's conclusion that Plaintiff's prison records and IQ score were not consistent with Dr. Helder's opinion. (Tr. 313, 327). Accordingly, the Court does not agree with Plaintiff's claim that the ALJ failed to provide specific medical evidence in support of his decision to discount Dr. Helder's opinion regarding Plaintiff's ability to work.

Plaintiff also contends the ALJ erred in finding Dr. Helder's opinion inconsistent with Plaintiff's testimony at the administrative hearing. Plaintiff states his testimony before the ALJ alleged problems with concentration and focus, anxiety, difficulty controlling anger, and a desire to one day achieve mental stability. Review of the administrative hearing shows Plaintiff did indeed provide such statements. (Tr. 40, 52, 56-57). However, as previously stated, the Court must decline any invitation to use such statements to re-weigh the evidence or substitute its judgment for that of the Commissioner. While Plaintiff has cited testimony he finds particularly consistent with Dr. Helder's opinion, the Court is limited to determining whether the ALJ provided substantial evidence in support of his decision to discount Dr. Helder's opinion.

In his decision, the ALJ noted Plaintiff's testimony that he lived with his wife's parents, failed the GED test, did not have a driver's licence, experienced difficulty with concentration, had not worked full-time in the last fifteen years, and felt angry when he could not complete tasks assigned to him. (Tr. 17-18). The ALJ further noted Plaintiff testified he performed chores from a list completed by his wife, cut the grass, walked and fed a dog, performed housework, watched television, attended church twice a week, enjoyed riding a four wheel all-terrain vehicle, performed minor maintenance on the four wheel all-terrain vehicle, enjoyed fishing, shopped at malls and discount stores, and attended counseling. Id.

Plaintiff's testimony regarding his activities of daily living provided several statements which the ALJ appropriately found to demonstrate good functioning or an ability to work. Specifically, the ALJ gave particular weight to Plaintiff's testimony that he enjoyed fishing, was able to work on a four-wheel all-terrain vehicle, took care of his daughter, performed house-hold chores, and performed some cooking. (Tr. 18). Additionally, the ALJ gave weight to Plaintiff's statements on his application for disability benefits. Specifically, the ALJ noted Plaintiff's statements that he was able to clean and do laundry, perform yard work, shop for needed food and personal supplies, play ball with his daughter, attend lunch at his mother's home a few times a month, and attend church twice a week. Plaintiff has not addressed these statements or offered an argument as to why they do not support the ALJ's decision to discount Dr. Helder's opinion regarding Plaintiff's ability to work. Accordingly, the Court does not agree with Plaintiff's contention that the ALJ erred in characterizing Dr. Helder's opinion as inconsistent with Plaintiff's testimony.

After review of the ALJ's decision, the Court finds the ALJ provided specific reasons in support of his decision to discount Dr. Helder's opinion regarding Plaintiff's ability to work.

The undersigned agrees with the ALJ that, considered together, Plaintiff's medical records from Appalachee Correctional Institute, testimony at the administrative hearing, and activities of daily living reported on his application for disability benefits provided substantial evidence in support of the ALJ's decision to discount this opinion. Additionally, the Court notes the Code of Federal Regulations explains a medical source's opinions regarding a claimant's ability to work are not considered "medical opinions." 20 C.F.R. § 416.927(c). Accordingly, the Court disagrees with Plaintiff's contentions that the ALJ erred by discounting Dr. Helder's opinion regarding Plaintiff's ability to work as inconsistent with other medical evidence and Plaintiff's testimony.

Plaintiff's third claim of error asserts the ALJ improperly relied on the proposition that the ultimate finding of disability is a finding of fact reserved for the Commissioner and failed to consider the entirety of Dr. Helder's opinion. (Doc. 16, pp. 15-16). Specifically, Plaintiff claims the ALJ failed to adequately consider Dr. Helder's assessment of a marked impairment in Plaintiff's short-term memory and moderate difficulties in his concentration skills, mental control, and working memory. Id. To the extent Plaintiff argues the ALJ failed to address all aspects of Dr. Helder's evaluation, the Court agrees.

An ALJ must consider all evidence of record in evaluating a claim of disability. 20 C.F.R. § 416.927(b). In addition, an ALJ must state the weight given to the evidence considered and his reasons for accepting or rejecting particular items of evidence. See Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985); Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Without such a statement, the district court cannot determine whether the ALJ's final decision is rational and supported by substantial evidence. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Although the ALJ is required to consider all evidence,

he is not required to provide a discussion of each individual item.  Vincent v. Heckler, 739

F.2d 1393, 1394–95 (9th Cir. 1984).  Rather, the ALJ must explain his reasons for rejecting

any significant probative evidence.  Id.

Dr. Helder reported Plaintiff exhibited moderate impairments with concentration skills,

mental control, and working memory during his evaluation.  (Tr. 300).  As the Commissioner

states, the ALJ acknowledged this statement in determining Plaintiff's RFC by finding

Plaintiff experienced moderate difficulties in maintaining concentration, persistence, and

pace.  (Tr. 16).  However, Dr. Helder also reported Plaintiff's performance on the Digit Span

Sub-test indicated a marked impairment in short-term memory.  (Tr. 298, 300).  The ALJ did

not acknowledge this statement in making his findings as to Plaintiff's RFC.  (Tr. 16).  The

ALJ did acknowledge Plaintiff's difficulty with concentration and memory tasks later in

discussing his determination of Plaintiff's RFC.  (Tr. 18).  However, the statement was

cursory and offered no indication of how Dr. Helder's assessment affected the ALJ's

determination of Plaintiff's RFC.

The undersigned finds Dr. Helder's opinion that Plaintiff suffered from a marked

impairment in short term memory is significant probative evidence.  While the ALJ's

determination that Plaintiff experienced moderate difficulties in the third functional area did

account for the moderate limitations assessed by Dr. Helder, it is not clear how the ALJ's

determination accounted for the additional marked limitation in short-term memory.  Rather,

it would seem that a claimant who experienced a marked limitation in short-term memory,

along with additional moderate difficulties in the third functional area, would experience

more than moderate limitations in maintaining concentration, persistence, and pace.

Additionally, the fact that the ALJ only acknowledged Dr. Helder's assessment of moderate

impairments in determining the effect of Plaintiff's impairments on the third functional area suggests the ALJ discounted or rejected this finding.  An ALJ may reject the opinion of any physician if the evidence supports a contrary finding.  <u>Parks v. Comm'r of Soc. Sec.</u>, 353 F. App'x 194, 195 (11th Cir. 2009) (citing <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985)).  However, if the ALJ did discount the medical opinion of Dr. Helder, he was required to explain his reasons for doing so and support those reasons with substantial evidence. The ALJ did not provide a discussion of his reasons for discounting Dr. Helder's evaluation beyond stating his reasons for discounting Dr. Helder's opinion regarding Plaintiff's ability to work.  Accordingly, the Court agrees with Plaintiff's claim that the ALJ failed to adequately address the entirety of Dr. Helder's evaluation.

On remand, the Court directs the ALJ to further consider the evaluation conducted by consultative examiner Dr. Helder.  Specifically, the ALJ should address Dr. Helder's assessment of a marked limitation in Plaintiff's short-term memory, explain how this assessment affects the analysis of the severity of Plaintiff's mental impairments, and explain how the limitation is accounted for determining Plaintiff's RFC.  Alternatively, if this finding is discounted or rejected on remand, the Court directs the ALJ to provide a clear statement to that effect and an appropriate justification in support of the decision.

With respect to the opinions of ARNP Stowell, Plaintiff again raises three claims of error.  Specifically, Plaintiff asserts the ALJ erred in failing to apply the criteria provided by 20 C.F.R. § 416.927(c) in considering ARNP Stowell's opinions.  (Doc. 16, p. 18).  Plaintiff also asserts the ALJ improperly discounted the later opinions obtained from ARNP Stowell as being inconsistent with her earlier opinions.  <u>Id.</u>  Lastly, Plaintiff asserts the ALJ improperly rejected ARNP Stowell's opinions as being inconsistent with Plaintiff's testimony

Page 16

at the administrative hearing.  (Doc. 16, pp. 18-19).[3]  The undersigned disagrees with these claims of error.

The regulations make a distinction between the opinions of "acceptable medical sources" and "other sources."  20 C.F.R. § 416.913.  Examples of acceptable medical sources include licenced physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists.  Id.  Examples of other sources include nurse practitioners, physicians' assistants, school teachers, counselors, and welfare agency personnel.  20 C.F.R. § 416.913(d).  As noted above, appropriate weight must be given to the medical opinions of acceptable medical sources based on the length and frequency of treatment, the nature and extent of treatment, the medical evidence supporting the opinion, the opinion's consistency with the record as a whole, the source's specialization in relevant medical the issues, and any other factors which tend to support or contradict the opinion.  20 C.F.R. § 416.927(d).  Although these factors explicitly apply to the opinions of acceptable medical sources, they may also be used to evaluate the opinions of other healthcare providers and non-medical sources.  SSR 06-03p.

Plaintiff first argues the ALJ should have used the factors provided in 20 C.F.R. § 416.927(c) to determine the proper weight to give the opinions of ARNP Stowell.  (Doc. 16, p. 18).  However, Plaintiff overstates the effect of SSR 06-03p in arguing it "directs adjudicators to use the same factors for the evaluation of 'other sources' that are used to evaluate the opinions of 'acceptable medical sources.'"  (Doc. 16, p. 17).  The regulation

_____

[3] Plaintiff raises the same argument regarding his testimony at the administrative hearing which the Court considered in its discussion of Dr. Helder's opinion.  The Court disagrees with this argument regarding ARNP Stowell's opinions for the same reasons provided in its analysis of Dr. Helder's opinions. Accordingly, the Court will not provide further discussion of the issue at this juncture.

requires that all evidence be considered, but only explains that the same factors **can** be used to evaluate the opinions of both acceptable medical sources and other healthcare providers.  SSR 06-03p (emphasis added).  The permissive language of the regulation is noted in <u>Williams v. Astrue</u>, 1:09-CV-02689-AJB, 2011 WL 1131328 (N.D. Ga. Mar. 28, 2011), which Plaintiff also cites.  (Doc. 16, p. 17).  In that case, the ALJ erred in refusing to consider evidence from a physician's assistant merely because the assistant was not an acceptable medical source.  <u>Williams</u>, 2011 WL 1131328, at *14.  Indeed, it is erroneous for an ALJ to fail to consider a piece of evidence solely because it was not authored by an acceptable medical source.  However, it is not erroneous for an ALJ to discount a piece of evidence if an appropriate justification is offered.  Here, the ALJ did consider the opinions of ARNP Stowell and provided an appropriate justification for discounting them.  Accordingly, the Court finds no error in the ALJ's failure to apply the factors provided in 20 C.F.R. § 416.927(c).

Plaintiff next argues the ALJ improperly characterized the opinions of ARNP Stowell as containing inconsistent findings.  (Doc. 16, p. 18).  In particular, Plaintiff finds fault with the ALJ's statement, "the opinion in 5F is not entirely consistent with a note by the same nurse practitioner stating that the claimant was able to perform part-time work."  Plaintiff contends an ability to perform part-time work does not equate to an ability to work eight hours a day, five days a week.  <u>Id.</u>  The document referred to in the ALJ's opinion is a Mental Capacity Exam containing questions related to skills and activities an individual would need to perform on a day to day basis in a normal work setting.  (Tr. 330-33).  The assessment adopts the same five-point scale used to evaluate the four functional areas in 20 C.F.R. § 416.920a.  <u>Id.</u>  The document also uses language similar to the four functional

areas in most of its questions.  Id.

The assessment indicated Plaintiff would experience extreme impairments in the majority of work related activities contained on the form.  (Tr. 330-31).  For example, one of the categories considered in the document was entitled "Sustained Concentration and Persistence."  The assessment suggested Plaintiff would experience extreme difficulties in seven of ten work related activities in this category and marked difficulties in the remaining three areas.  Id.  The document further provided Plaintiff would likely experience extreme difficulty in six of the twelve remaining activities listed in the other categories, experience marked limitations in seven, and require a least four days of absences each month.  In short, the assessment suggested Plaintiff would experience extreme difficulty in the four functional areas of 20 C.F.R. § 416.920a(c), particularly in the area of maintaining concentration, persistence, and pace.  In evaluating the severity of a mental impairment, an extreme limitation in any of the four functional areas represents a degree of limitation that is inconsistent with the ability to perform any gainful activity.  20 C.F.R. § 416.920a(c)(4).  Gainful work activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 416.972(b).  Because part-time work falls within the ambit of gainful work activity and the findings of the Mental Capacity Assessment suggested Plaintiff was unable to perform any gainful activity, the ALJ did not err in characterizing the assessment as inconsistent with ARNP Stowell's statement that Plaintiff could perform part-time work.

The Court would not support a decision to reject an entire detailed opinion based on a single inconsistency such as the one noted above.  However, the ALJ did not do so.  Instead, the ALJ again cited Plaintiff's testimony and prison records in support of his

decision to discount the Mental Status Examination.  (Tr. 19).  The Court has found these

constituted substantial evidence in support of the ALJ's decision to discount the opinion of

Dr. Helder regarding Plaintiff's ability to work.  For the same reasons, the Court finds

Plaintiff's testimony and medical records provide substantial evidence in support of the

decision to discount the opinions of ARNP Stowell.

> **2.    Whether the ALJ erred by failing to include a learning disorder among Plaintiff's severe impairments**

Plaintiff next asserts the ALJ erred in failing to include a learning disorder among

Plaintiff's severe impairments at the second step of his evaluation.  (Doc. 16, p. 10-12).

Plaintiff notes that the second step of the evaluation is a threshold inquiry where only the

most trivial impairments should be rejected as not severe.  Id.  Plaintiff further argues the

ALJ's error is harmful because it affected later steps of the evaluation.  Id. The

Commissioner responds by arguing the omission amounted to no more than harmless error

because the ALJ satisfied step two of the evaluation process by finding Plaintiff's other

impairments to be severe.  (Doc. 17, p. 5).

At the outset, the Court notes Plaintiff himself did not include a learning disorder as a

limitation impairing his ability to work on his application for disability benefits.[4]  (Tr. 172).

Also, the Court finds no discussion of impairments in addition to those listed in Plaintiff's

application during the administrative hearing.  In the absence of such an offering from

Plaintiff, the Court is hesitant to find error in the ALJ's exclusion of this impairment from his

step two findings.  See Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) (citing

Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)) ("The administrative law judge is under no

---

[4] Plaintiff's application includes the impairments which the ALJ determined to be severe.

'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'"). However, because the ALJ did consider this issue and the Court is remanding this case for further consideration, the Court will address Plaintiff's claim.

At the second step of evaluating a claim of disability, an ALJ must determine whether a claimant's impairments, or combination of impairments, can be considered severe. 20 C.F.R. § 416.920. This step is a threshold inquiry, and an impairment should only be deemed not severe if it is no more than "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). An impairment's severity is measured in terms of its effect on the claimant's ability to work and not in terms of deviation from medical standards of bodily perfection or normality. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986); 20 C.F.R. § 416.921(a).

At step two, the ALJ found the learning disorder reflected in the opinions of consultative examiner Dr. Helder and ARNP Stowell did not constitute a severe impairment. (Tr. 15-16). In support of this finding, the ALJ noted a lack of testing for the impairment and Plaintiff's score of 103 in the Beta-III IQ test. Id. The Court notes Dr. Helder performed tests during his evaluation which appear to be the basis of his diagnosis of a learning disorder. Specifically, Dr. Helder's diagnosis appears to be based on Plaintiff's performance on the Digit Span Sub-Test and Folstein Mini-Mental State exam. (Tr. 298). Plaintiff's performance on the Digit Span Sub-Test indicated marked difficulties with short-term memory, but Plaintiff's score of twenty-eight out of thirty on the Folstein test indicated

cognition within normal limits. While these two tests administered on a single occasion may not offer the ideal amount of support for Dr. Helder's diagnosis, the Court notes that state agency medical and psychological consultants are highly qualified specialists who are also experts in social security disability evaluation. 20 C.F.R. § 416.927. Also, the Court again notes the low threshold at step two of the evaluation process. As such, the Court agrees with Plaintiff that the ALJ failed to provide substantial evidence in support of his decision to exclude the learning disorder diagnosed by Dr. Helder from his step two findings.

As the Commissioner notes, there is no requirement that an ALJ include every severe impairment at the second step of analysis where the ALJ considers all of the claimant's impairments, whether severe or not, in combination in later steps of the evaluation process. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010); Delia v. Comm'r of Soc. Sec., 433 F. App'x 885, 887 (11th Cir. 2011). However, the Court has already found it is not clear that the ALJ considered all of Plaintiff's limitations in determining the severity of Plaintiff's mental impairments or determining Plaintiff's RFC. Specifically, the ALJ did not clearly account for Plaintiff's marked impairment in his short-term memory. Accordingly, on remand, the Court will ask the ALJ to consider Plaintiff's diagnosis of a learning disorder and determine whether it should be included among Plaintiff's severe impairments.

### 3. Whether the ALJ erred by posing an incomplete hypothetical question to the VE

Plaintiff next argues the ALJ failed to include all of the limitations arising from Plaintiff's impairments in the hypothetical question posed to the VE at the administrative hearing. (Doc. 16, pp. 21-22). Specifically, Plaintiff asserts the ALJ failed to account for the mental impairments assessed in the opinions of Dr. Helder and ARNP Stowell. Because the

Court has found the ALJ properly rejected the findings of the Mental Status Examination authored by ARNP Stowell, the Court finds no error in the ALJ's decision to exclude these limitations from the hypothetical question posed to the VE. However, as the Court has found the ALJ failed to specifically address Dr. Helder's assessment of a marked impairment in short-term memory, the Court agrees with Plaintiff's contention as it relates to the opinions of Dr. Helder.

At the fifth step of the ALJ's evaluation, the burden of persuasion shifts to the Commissioner to show the Plaintiff is able to perform jobs that exist in significant numbers in the national economy. Bowen, 482 U.S. at 146; 20 C.F.R. §416.920(g). One method an ALJ may use in making this determination is to pose a hypothetical question to a VE regarding the effects of a claimant's impairments on the claimant's ability to work. Phillips, 357 F.3d at 1239–40. Additionally, the ALJ may account for the limitations identified in the PRTF analysis by including them, explicitly or implicitly, in a hypothetical question posed to a VE. Winschel, 631 F.3d at 1180. However, if the ALJ relies on the testimony of a VE, the ALJ must pose a hypothetical question which includes all of the claimants impairments in order for the question to constitute substantial evidence. Wilson, 284 F.3d at 1227.

In this case, the ALJ relied on the testimony of a VE to determine the extent to which Plaintiff's non-exertional limitations eroded Plaintiff's occupational base. (Tr. 20, 69). The ALJ posed the following hypothetical question:

> Let me have you assume a hypothetical person
> with the [same] age and education as the claimant
> which are a younger individual with limited
> education, and assume the hypothetical person is
> capable of performing without any exertional limits
> but mentally would be able to perform simple
> routine repetitive tasks, could have occasional

> changes in the work setting and frequent
> interaction with crowds, public and co-workers but
> not able to meet fast paced, high production
> demand[s].  Assuming these limitations are there
> any jobs a hypothetical person could perform in the
> regional or national economy?

(Tr. 69).  In response, the VE testified a hypothetical person with the characteristics provided would be able to perform the duties of a ticket taker, kitchen helper, and cleaner. (Tr. 69-70).

Because the ALJ did not clearly account for the marked limitation in Plaintiff's short-term memory assessed by Dr. Helder, the Court is unable to find the ALJ properly accounted for Plaintiff's mental impairments in the question posed to the VE.  Accordingly, on remand, the Court will ask the ALJ to pose a hypothetical question to a VE which accounts for all of the limitations caused by Plaintiff's impairments.

### 4. Whether the ALJ erred by failing to reach a proper credibility finding regarding Plaintiff's testimony

Finally, Plaintiff argues the ALJ erred by failing to provide a proper credibility finding regarding Plaintiff's testimony at the administrative hearing.  (Doc. 16, pp. 19-21).  Again, Plaintiff provides three specific claims in support of this argument.  Id.  First, Plaintiff objects to the ALJ's consideration of Plaintiff's testimony that he sometimes watches television. (Doc. 16, p. 20).  Second, Plaintiff contends the ALJ improperly discounted his credibility based on his search for employment.  Id.  Third, Plaintiff asserts the ALJ improperly used boilerplate language to discount his testimony at the administrative hearing.  (Doc. 16, pp. 20-21).

An ALJ must consider a claimant's complaints of pain or other subjective symptoms and determine the extent to which they can reasonably be accepted as consistent with

objective medical evidence. 20 C.F.R. § 416.929(a). In making this determination, the ALJ must apply the Eleventh Circuit's three-part "pain standard." The standard requires an ALJ to first determine whether there is evidence of an underlying medical condition and then determine whether the severity of the alleged symptoms is confirmed by either objective medical evidence or a reasonable expectation that the underlying medical condition caused the alleged symptoms. Foote, 67 F.3d at 1560. When an ALJ does not credit a claimant's testimony regarding the severity of the claimant's alleged symptoms, the ALJ must support his decision with specific reasons based on substantial evidence. Jones v. Dep't of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

In his decision, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. (Tr. 18). However, the ALJ discounted the credibility of Plaintiff's testimony regarding the severity of his symptoms. Id. In support of this decision, the ALJ stated,

> Given the fact that the claimant has no ongoing mental treatment, recent prison records as noted show normal IQ and adequate stability without medication, and current functional activities of daily living, there is compelling evidence that the claimant is able to work with the limitations as provided in the residual functional capacity and his allegations to the contrary are not entirely credible.

(Tr. 19). Consequently, the ALJ discounted Plaintiff's testimony to the extent it was inconsistent with the RFC assessment. (Tr. 18).

Plaintiff first asserts the ALJ improperly found Plaintiff's testimony that he occasionally watches crime shows on television suggested he had an adequate capacity to concentrate and persist. (Doc. 16, p. 20). Plaintiff further asserts that his testimony

provided that he could sometimes follow crime shows, but would forget details if he left the room.  Id.  The Court agrees with Plaintiff that one's propensity for watching television is a particularly dubious indicator of that person's ability to work or concentrate.  However, the Court again notes the limitations of its standard of review.  When an ALJ's decision to not fully credit a claimant's subjective testimony is supported by substantial evidence from several items of record, objection to a single item is not likely to render the ALJ's decision unsupported.

The Court has already found Plaintiff's medical records from Apalachee Correctional Institute, psychiatric test scores, and statements regarding his other activities of daily living provided substantial evidence in support of the ALJ's decision to discount the opinions of Dr. Helder and ARNP Stowell.  The ALJ offered this evidence again in support of his decision to not fully credit Plaintiff's testimony regarding the severity of his impairments.  Plaintiff fails to provide any argument as to why these items of evidence do not support the ALJ's decision or fail to constitute substantial evidence.  Accordingly, the Court finds no error in the ALJ's decision to discount the credibility of Plaintiff's subjective testimony.

Plaintiff next objects to the ALJ's observation that Plaintiff sought work after he was released from prison.  (Doc. 16, p. 20).  Although the ALJ noted Plaintiff's search for employment in his decision, this does not appear to be a factor relied upon in his RFC findings or his decision to not fully credit Plaintiff's subjective complaints.  The ALJ also noted Plaintiff recently married, has a daughter, and other pieces of Plaintiff's personal history.  (Tr. 18).  The ALJ's decision makes it clear that he discounted Plaintiff's testimony based on Plaintiff's lack of current mental treatment, prison records, average IQ score, and functional activities of daily living.  (Tr. 19).  Because the few historical notes mentioned by

the ALJ do not appear to fall into any of these categories, the Court does not agree with Plaintiff's contention that the ALJ used them to discount his testimony.

Plaintiff's last objection to the ALJ's credibility findings relies on non-binding case law from the Seventh Circuit. As Plaintiff asserts, the Seventh Circuit has criticized the decisions of administrative law judges in that region as containing unhelpful boilerplate language. Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012); Bjornson v. Astrue, 671 F.3d 640, 644–46 (7th Cir. 2012). Plaintiff does not offer any similar reasoning from the Eleventh Circuit and the Court is unable to find any. Rather, to the extent such objections have been considered in the Eleventh Circuit, they do not appear to carry great weight. See Thomas v. Comm'r of Soc. Sec., 6:11-cv-1231-ORL-TBS, 2013 WL 787179 at *7 (M.D. Fla. Mar. 4, 2013) (stating the boilerplate nature of an ALJ's decision is not an issue the Court must decide).

Under binding case law of the Eleventh Circuit, the Court cannot agree with Plaintiff's claim that the ALJ erred in discounting Plaintiff's subjective testimony. See Foote, 67 F.3d at 1562 (citing MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986)) (a reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (an ALJ's credibility determination need not use particular language so long as the determination is not a broad rejection). In this case, the ALJ explicitly discounted Plaintiff's credibility and offered a clear justification based on the record in support of that decision. (Tr. 19). The language used in the ALJ's decision does not affect the clarity of the bases relied upon or affect the merit of the justification provided. Accordingly, the Court finds the ALJ did not err in his decision to not fully credit Plaintiff's testimony regarding his subjective symptoms.

## IV.    CONCLUSION

For the reasons stated herein, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Accordingly, after due consideration, it is hereby

**RECOMMENDED:**

The Commissioner's decision be **REVERSED** and **REMANDED**.  On remand, the Commissioner should be directed to: (1) review the opinions and findings of consultative examiner Dr. Helder and explain in detail the weight accorded to his opinions; (2) consider whether the learning disorder assessed by Dr. Helder should be included as a severe impairment; (3) pose a hypothetical question to a VE which clearly sets forth all of Plaintiff's limitations; and (4) conduct any further proceedings necessary in light of any new findings.

It is further recommended that should this Report and Recommendation be adopted and should the remand result in the award of benefits, Plaintiff's attorney be granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the date of a notice of award of benefits from the Social Security Administration.

**DONE AND ORDERED** at Jacksonville, Florida, this __2nd__ day of October, 2013.


MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
The Honorable Marcia M. Howard,
United States District Judge